Jon A. Birmingham (Cal. Bar No. 271034)
jbirmi@fitcheven.com
Fitch, Even, Tabin & Flannery LLP
21700 Oxnard Street, Suite 1740
Woodland Hills, California 91367
Telephone:   (818) 715-7025
Facsimile:   (818) 715-7033

Attorney for Plaintiff Spin Master Ltd.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIN MASTER LTD., | Case No.:  2:18-cv-3435 |
| *Plaintiff,* | COMPLAINT FOR PATENT INFRINGEMENT (35 U.S.C. §271) |
| v. | DEMAND FOR JURY TRIAL |
| MATTEL, INC., | |
| *Defendant.* | |

### SPIN MASTER LTD.'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Spin Master Ltd. ("Spin Master"), for its Complaint against Defendant Mattel, Inc. ("Mattel"), alleges as follows:

### JURISDICTION AND VENUE

1.     This case arises under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281 *et seq*. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under the patent laws).

2.      This Court has personal jurisdiction over Mattel because, among other things, Mattel is doing business in the State of California and its principal place of business is in this judicial district. Indeed, Mattel purposefully directs and conducts business in California and the acts of infringement complained of in this action took place in the State of California.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), 1400(b), and 1391(b)(2) as Mattel has committed acts of infringement in the Central District of California and maintains its headquarters in the Central District of California and thus has a regular and established place of business in the Central District of California.

## THE PARTIES

4.      Plaintiff Spin Master is a Canadian corporation with its principal place of business located at 121 Bloor Street East, Toronto, Ontario, Canada M4W 1A9.

5.      Upon information and belief, Mattel is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 333 Continental Boulevard, El Segundo, CA 90245. Upon information and belief, Mattel is in the business of designing, marketing, selling, and distributing toys in the United States, including in this District.

6.      Upon information and belief, Mattel directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers for sale, and/or sells infringing products in the United States, including in the Central District of California, and otherwise purposefully directs infringing activities to this district in connection with the Mecard line of transformable toys.

## FACTS IN SUPPORT OF PLANTIFF'S CLAIMS

### A. Spin Master and its Bakugan Brand

7.      Spin Master was founded in 1994. Since that time, Spin Master has launched many notable toy products, including the Air Hogs products, launched in 1998. Between

Complaint for Patent Infringement
Case No. 2:18-cv-3435

2

2002-2007, Spin Master expanded its brand globally, allowing for the expansion of its licensing capabilities and relationship with entertainment companies.

8.      In 2007, Spin Master launched Bakugan, a series of transforming robots which became a global sensation before becoming the most successful product line in Spin Master's history, eventually reaching global sales of over $1 billion.

9.      As a combination of the Japanese words 'baku' meaning 'to explode' and 'gan' meaning 'sphere,' the Bakugan name literally translates to 'exploding sphere.' This is an apt name for the Bakugan line of toys, as the Bakugan characters "explode" from a spherical form into a character form when the Bakugan character comes in contact with a magnetic component:

 

10.      The Bakugan line of transforming toys was launched in conjunction with a Japanese-Canadian anime series called Bakugan Battle Brawlers.

11.      While this anime series initially ran for four seasons, a number of spin-off series were released after the initial series' end, including Bakugan Battle Brawlers: New Vestroia, Bakugan Battle Brawlers: Gundalian Invaders, Bakugan Battle Brawlers: Mechtanium Surge, Baku Tech! Bakugan, and finally Baku Tech! Bakugan Gachi.

12.      Due to the increasing popularity of the Bakugan brand, Spin Master formally announced a reboot of the Bakugan brand, including a reboot of the anime series, in late 2017 slated for release in the 2019-2020 time-frame.

13. In the wake of Bakugan's success, a number of companies, including Mattel, has released their own transforming toys in an effort to capitalize on Spin Master's success. Mattel's transforming toy line, called Mecard, was released in the United States along with its own corresponding cartoon web series.

**B. The '508 Patent and the '073 Patent**

14. Spin Master vigorously works to protect its intellectual property, including the Bakugan brand. In particular, Spin Master owns a number of United States patents related to the Bakugan brand of toys.

15. Relevant to this dispute, Spin Master owns all right, title, and interest in, and has the right to sue and recover for past, present and future infringement of United States Patent No. 8,500,508 (the "'508 Patent"), entitled "Transformable Toy." The '508 Patent was duly and legally issued by the United States Patent and Trademark Office to Yamada et al. on August 6, 2013. A copy of the '508 Patent is attached hereto as Exhibit A.

16. The '508 Patent was issued in accordance with 35 U.S.C. § 282 and is presumed to be valid.

17. Also relevant to this dispute, Spin Master owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of United States Patent No. 9,868,073 ("the '073 Patent"), entitled "Transformable Toy." The '073 Patent was duly and legally issued by the United States Patent and Trademark Office to Yamada et al. on January 16, 2018. A copy of the '073 Patent is attached hereto as Exhibit B.

18. The '073 Patent was issued in accordance with 35 U.S.C. § 282 and is presumed to be valid.

**C. Mattel's Infringing Mecard Toys**

19. Upon information and belief, Mattel launched the Mecard line of transformable toys in the United States around late-March or early-April 2018.

20.     Prior to its U.S. launch, the Turning Mecard toys were available in South Korea, and existed alongside a Turning Mecard anime series.

21.     Mattel's Mecard line of transformable toys includes at least 25 distinct character vehicles, including the Mirinae vehicle, shown below:



22.     On information and belief, each of the at least 25 distinct character vehicles operates in substantially the same infringing manner.

**a. The Mecard Toys Infringes at Least Claim 1 of the '508 Patent**

23.     Regarding the '508 Patent, and using the Mirinae vehicle as a representative example, the Mecard toys are toys having a main body element (vehicle shell):



and at least one first moveable element (the vehicle base and character components):



associated with said main body element and moveable with respect thereto (in this case, via a rotating connector):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   24.    The first moveable element (the vehicle base and character components)
19   associated with the main body element (vehicle shell) is moveable with respect thereto from
20   a first position adjacent said main body element in which the toy is rollable along a playing
21   surface containing a metal or magnetic material, to a second position in which at least a
22   portion of said first moveable element (the vehicle base and character components) has
23   moved away from said main body element and the toy is not rollable along the playing
24   surface:

25
26
27
28

1
2
3
4
5
6
7



8
9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24
25
26



27
28

25.    The at least one first moveable element (the vehicle base and character components) of the Mecard toys is permanently biased toward said second position. Specifically, the rotating connector and spring is arranged to keep the first moveable element in the second position, absent an overcoming force from a user:



26.    And the at least one first moveable element (the vehicle base and character components) is provided with catch means co-operable with moveable releasable latch means in said main body element to maintain at least one said first moveable element (the vehicle base and character components) in said first position until said latch means is released. Below, the catch means and releasable latch means maintains the vehicle base and character components in the first position (vehicle shape):



And below, the latch means is released, which causes it to transform into the second position:





27.     The releasable latch means of the Mecard toy is provided with a magnet:



1
2
3
4
5
6
7
8
9



10   28.   And the releasable latch means of the Mecard toy is moveable out of

11 engagement with said catch by attraction to said playing surface, whereby a rolling of the

12 toy along the playing surface ceases when said latch means is moved out of engagement

13 with said catch. Specifically, when the Mecard toy rolls over the Mecard playing card, the

14 latch means moves out of engagement with the catch due to the magnetic attraction between

15 the magnet in the releasable latch means and the magnetically-responsive element in the

16 Mecard playing card:

17
18
19
20
21
22
23
24
25



26   29.   Accordingly, the Mirinae vehicle infringes at least Claim 1 of the '508 Patent.

27 While the above analysis was described with reference to the Mirinae, upon information

28

and belief, each of the Mecard Vehicles (collectively, the "Infringing Products") are substantially the same as the Mirinae vehicle, and therefore infringe at least Claim 1 of the '508 Patent for the same reasons as those set forth above.

### b. The Mecard Toys Infringes at Least Claim 1 of the '073 Patent

30.     Regarding the '073 Patent, and again using the Mirinae vehicle as a representative example, the Mecard toys are transformable toys, and are described as such by Mattel's own website:

**Product Features**                                                          −

Mecard is an exciting new head-to-head action battle game based on a popular South Korean TV show, and Mecard Mecardimals offer thrilling fun involving super cool vehicles that transform into epic warriors! In the world of Mecard, Jason, an energetic boy from Earth, meets Evan, a car-shaped mini robot from another planet, and then he's thrust into an ancient war between 3 rival worlds! Jason learns that Evan is a Mecardimal—a tiny car able to transform into a powerful mech warrior! That's the world of Mecard. Welcome aboard! Now kids can play out Mecard action in real life with their own collection of Deluxe Mecardimals that they push over "magical" cards to instantly transform their vehicles into fantastical battling warriors! Each Mecardimal has a designated faction color; just peel off the Mecardimal's sticker to find out which faction your Mecardimal is in. After landing on the card and transforming into a warrior, the Mecardimal holds up the card to display three different point values. Each player collects the points that correspond with his Mecardimal's faction color, and the player with the highest card number wins the round! This assortment of Deluxe Mecardimals includes heroes and villains from the world of Mecard, and each Mecardimal comes with three playing cards—one each in bronze, silver, and gold—so kids can go head to head with their friends in competitive play. Mecard fans will love the bright, vivid, game-authentic designs of vehicle favorites like Evan, Tanatos, Shuma, Phoenix, Tador, and more (each sold separately)! Kids will spend countless hours engaging in active, competitive play with magnificent transforming Mecardimals! Includes one Deluxe Mecardimal and three game cards. Colors and decorations may vary.

- Based on a popular South Korean TV show, Mecard Mecardimals offer thrilling, transforming fun! Now with Deluxe Mecardimals, kids can play out Mecard action in head-to-head competition.
- Push your Mecardimal over the "magical" game card, and watch your vehicle instantly transform into a fantastical battling warrior!
- Immediately after transformation, the new warrior displays the card. The player with the highest card number wins the round!
- Each Deluxe Mecardimal comes with three playing cards: one bronze, one silver, and one gold.
- Kids will love spending hours playing out Mecard competition with exciting, transforming Mecardimals!
- ©2015 CHOIROCK. All Rights Reserved

Mecard™
Mirinae Deluxe
Mecardimal
Figure

Ages: 6+

☆☆☆☆☆   Write a review

**$14.99**

PRE-ORDER · Available March 23, 2018



MORE WAYS TO BUY

SHARE





1

31.   Each of the Mecard vehicles include a first toy component, e.g., the vehicle:



32.   The first toy component (vehicle) includes a toy body, e.g., the vehicle shell:



33.   The first toy component (vehicle) of the Mecard includes at least one auxiliary component (vehicle base and character components) coupled with the body (vehicle shell) and rotatable towards the body (vehicle shell) to a closed position and rotatable away from the body (vehicle shell) to an open position. Specifically, the character body is coupled to

the body (vehicle shell) and rotatable towards the body (vehicle shell) to a closed position (vehicle):



And which is rotatable away from the body to an open position (character form):



1
2
3
4
5
6
7
8
9
10
11
12
13



14   34.    The first toy component (vehicle) is also rollable in the closed position (vehicle
15   form). Specifically, because in the closed position the first toy component is in the form of
16   a vehicle with wheels, it is capable of rolling on its wheels:

17
18
19
20



21
22
23
24

25   35.    The first toy component includes one auxiliary component elastic element,
26   e.g., a rotating spring connection:

27
28



36.     The at least one auxiliary component (vehicle base and character components) is rotatably associated with the body (vehicle shell) via the at least one auxiliary component elastic element (spring), such that the at least one auxiliary component elastic element (spring) biases the at least one auxiliary component (vehicle base and character components) to the open position (the character form) away from the body (vehicle shell):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





26      37.    The first toy component (vehicle) includes a locking component associated

27  with the toy body (vehicle shell) and selectively positionable between a first, locked

28

---

position wherein the at least one auxiliary component (vehicle base and character components) is retained in the closed position (vehicle form):



and a second, disengaged position wherein the at least one auxiliary component (vehicle base and character components) is released to an open position (character form):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





the locking mechanism including a latch:



and a keeper:



engaged with the latch when the locking assembly is in the first, locked position:



38.     The first toy component also includes a first magnetically-responsive member associated with the locking component:



39.     The transformable toy also includes a second toy component, e.g., card accessory, separate from the first toy component and including a second magnetically-responsive member. Specifically, the card accessory includes a metal component:



40.   At least one of the first magnetically-responsive member and the second magnetically-responsive member is a magnet. Specifically, as set forth above, the first magnetically-responsive member is a magnet:



41.   The Mecard also includes wherein upon the second magnetically-responsive member being brought into proximity of the first magnetically-responsive member (e.g., the card accessory being brought into contact with the magnet in the vehicle), the latch of the locking component associated with the first magnetically-responsive member moves to

thereby disengage the latch from the keeper and position the locking component in the second, disengaged position:





42.    Accordingly, the Mirinae vehicle infringes at least Claim 1 of the '073 Patent. While the above analysis was described with reference to the Mirinae vehicle, upon information and belief, each of the Infringing Products are substantially the same as the

Mirinae vehicle, and therefore infringe at least Claim 1 of the '073 Patent for the same reasons as those set forth above.

**D. Mattel's Infringing Conduct**

43.     Upon information and belief, Mattel makes, uses, sells, offers to sell and/or imports products, including the Infringing Products, into the United States.

44.     Mattel sells and offers to sell the Infringing Products via its website https://shop.mattel.com. Mattel's sale and offer for sale of the Infringing Products via its website includes to customers in California, and the Infringing Products are available for shipment via Mattel's website to customers in California.

45.     Upon information and belief, Mattel also sells and offers to sell the Infringing Products to third-party resellers, including at least Toys R Us.

46.     Upon information and belief, Mattel's sale and offer for sale of the Infringing Products to the above third-party resellers in the United States takes place in California. The above third-party resellers also sell and offer to sell the Infringing Products to end-user customers in the United States, including in California. And the Infringing Products are for sale on above-identified third-party resellers' websites, and are available for shipment in the United States, including California.

47.     Upon information and belief, the Infringing Products sold through Toys R Us were distributed by Mattel through Mattel's wholesale distribution channel.

48.     Spin Master has communicated with Mattel regarding Spin Master's intellectual property and Mattel's Infringing Products.

49.     Mattel also provides an Instruction Sheet with each Infringing Product sold, explaining to the end-user in a step-by-step manner how to use the Infringing Products:



50.   Upon information and belief, Mattel has infringed and continues to infringe the '508 Patent and the '073 Patent within the meaning of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing the Infringing Products into the United States without Spin Master's authorization.

## COUNT I

### (Infringement of U.S. Patent No. 8,500,508)

51.   Spin Master incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

52.   Spin Master is the assignee and owner of all U.S. Patent rights in U.S. Patent No. 8,500,508 ("the '508 Patent"), with ownership of all substantial rights therein, including the right to exclude others from making, using, selling, offering for sale, and importing the invention of the '508 Patent, and to sue and recover damages for the past, present, and future infringement thereof. A true and correct copy of the '508 Patent is attached as Exhibit A.

53.   The '508 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

54.   As set forth in this Complaint, Mattel has directly infringed and continues to directly infringe the '508 Patent, including for example, at least Claim 1 of the '508 Patent by, among other things, using, offering for sale, selling, making, and/or importing its

Mecard toys. Mattel is thereby liable for infringement of the '508 Patent pursuant to at least 35 U.S.C. § 271(a).

55.    As a direct and proximate result of Mattel's patent infringement, Mattel has derived and received gains, profits, and advantages in an amount that has not been confirmed.

56.    Mattel has induced infringement of at least Claim 1 of the '508 Patent by at least providing an instruction sheet with the Infringing Products, instructing the end-user customers to use the Infringing Products.

57.    Spin Master has been harmed by this infringement and pursuant to 35 U.S.C. § 284, Spin Master is entitled to damages in an amount no less than a reasonable royalty as well as treble damages for Mattel's willful infringement together with interests and costs as fixed by this Court.

58.    Pursuant to 35 U.S.C. § 285, Spin Master is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

59.    Spin Master will suffer and is suffering irreparable harm from Mattel's infringement of Spin Master's Patents due to, among other things, lost business opportunities, lost market share, and price erosion. Spin Master has no adequate remedy at law. Pursuant to 35 U.S.C. § 283, Spin Master is entitled to an injunction against Mattel's continuing infringement of the '508 Patent. Unless enjoined, Mattel will continue its infringing conduct.

## COUNT II

### (Infringement of U.S. Patent No. 9,868,073)

60.    Spin Master incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

61.    Spin Master is the assignee and owner of all U.S. Patent rights in U.S. Patent No. 9,868,073 ("the '073 Patent"), with ownership of all substantial rights therein, including the right to exclude others from making, using, selling, offering for sale, and importing the

invention of the '073 Patent, and to sue and recover damages for the past, present, and future infringement thereof. A true and correct copy of the '073 Patent is attached as Exhibit B.

62.     The '073 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

63.     As set forth in this Complaint, Mattel has directly infringed and continues to directly infringe the '073 Patent, including for example, at least Claim 1 of the '073 Patent by, among other things, using, offering for sale, selling, making, and/or importing its Mecard toys. Mattel is thereby liable for infringement of the '073 Patent pursuant to at least 35 U.S.C. § 271(a).

64.     As a direct and proximate result of Mattel's patent infringement, Mattel has derived and received gains, profits, and advantages in an amount that has not been confirmed.

65.     Mattel has induced infringement of at least Claim 1 of the '073 Patent by at least providing an instruction sheet with the Infringing Products, instructing the end-user customers to use the Infringing Products.

66.     Spin Master has been harmed by this infringement and pursuant to 35 U.S.C. § 284, Spin Master is entitled to damages in an amount no less than a reasonable royalty as well as treble damages for Mattel's willful infringement together with interests and costs as fixed by this Court.

67.     Pursuant to 35 U.S.C. § 285, Spin Master is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

68.     Spin Master will suffer and is suffering irreparable harm from Mattel's infringement of Spin Master's Patents due to, among other things, lost business opportunities, lost market share, and price erosion. Spin Master has no adequate remedy at law. Pursuant to 35 U.S.C. § 283, Spin Master is entitled to an injunction against Mattel's continuing infringement of the '073 Patent. Unless enjoined, Mattel will continue its infringing conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Spin Master respectfully requests the following relief:

69.     An order and judgment that Mattel has infringed the '508 Patent and the '073 Patent under 35 U.S.C. § 271;

70.     A judgment in favor of Spin Master that the '508 Patent and the '073 Patent are valid and enforceable;

71.     A judgment that Mattel's infringement has been willful.

72.     A preliminary and permanent injunction enjoining and restraining Mattel, and its agents, affiliates, employees, and all persons in active concert or participation with it, from making, using, selling, offering for sale, and/or importing any goods not authorized by Spin Master which infringe the '508 Patent and the '073 Patent including, without limitation, the Infringing Products identified herein;

73.     An order requiring Mattel to file with this Court and serve upon Spin Master within fifteen (15) days after issuance of any injunction, a report in writing under oath setting forth in detail the manner and form in which Mattel has complied with the injunction;

74.     A determination and judgment that this is an exceptional case under 35 U.S.C. § 285;

75.     A judgment and order, pursuant to 35 U.S.C. § 284, requiring Mattel to compensate Spin Master for all damages caused by Mattel's infringement of the '508 Patent and the '073 Patent (but in no event less than a reasonable royalty), treble damages for willful infringement, and its costs incurred in this action;

76.     A judgment and order requiring Mattel pay Spin Master any supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

77.     A judgment and order requiring Mattel to pay Spin Master its reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and pre-judgment and post-judgment interest; and

78.     Such other and further and additional relief as this Court deems just and proper.

Dated: April 24, 2018                              FITCH, EVEN, TABIN & FLANNEY LLP

                                                   /s/ Jon A. Birmingham
                                                   Jon A. Birmingham (Cal. Bar No. 271034)

                                                   *Attorney for Plaintiff,*
                                                   SPIN MASTER LTD.

Of counsel (for whom motions for admission *pro hac vice* will be promptly filed):

Megan J. Redmond
Megan.redmond@eriseip.com
Clifford T. Brazil
Cliff.brazil@eriseip.com
Erise IP P.A.
7015 College Blvd.
Suite 700
Overland Park, KS 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601

## DEMAND FOR JURY TRIAL

Plaintiff Spin Master Ltd. hereby requests a jury trial on all issues so triable.

Dated: April 24, 2018

FITCH, EVEN, TABIN & FLANNEY LLP

/s/ Jon A. Birmingham
Jon A. Birmingham (Cal. Bar No. 271034)

*Attorney for Plaintiff,*
SPIN MASTER LTD.

---

Complaint for Patent Infringement
Case No. 2:18-cv-3435